IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Earl Arthur Eichline,

(Chapter 11)

Debtor.

Case No. 06-10658

Michael E. Kepler, Trustee,

Plaintiff,

v.

Adv. No. 11-00100

Earl Arthur Eichline, and

Earl A. Eichline Revocable Trust dated
April 22, 2009, and any amendments thereto,
By its Trustee, Earl Arthur Eichline,

Defendants.

MEMORANDUM DECISION

Earl Arthur Eichline ("Defendant") filed for relief under chapter 7 on April 12, 2006, was granted a discharge on August 8, 2006, and the case was closed on December 3, 2007. On January 21, 2011, the U.S. Trustee filed a motion to reopen the case, having received information that the Defendant may have had an interest in property which was not disclosed in his bankruptcy schedules or Statement of Financial Affairs. The case was reopened, and the chapter 7 trustee commenced this adversary under 11 U.S.C. § 549 and 551. A trial was held on September 8, 2011.

1

Prior to 1998, the Defendant owned a 160-acre parcel of land in Columbia County, Wisconsin (the Property) where he lived in one house and his son Eric Eichline ("Eric") lived in another. In 1997, a mortgage foreclosure judgment was entered against the Property. Pursuant to that judgment, the Property was to be sold at a sheriff's sale. The Defendant wished to redeem, but was unable to obtain another mortgage in his name. Eric obtained a mortgage in his and his wife's names and used the proceeds to fund the redemption.

To facilitate Eric's obtaining of the mortgage, on December 17, 1998, the Defendant conveyed the Property to Eric and his wife by Warranty Deed. (For the rest of this opinion, "Eric" will refer to his wife as well when they acted jointly.) On February 27, 1999, the Defendant and Eric entered into a contract (the Agreement) by which Eric agreed to convey the Property to either the Defendant or the Defendant's "family trust" at the time the mortgage "is paid, refinanced, or released for whatever reason." The recitals in the Agreement indicate that "Earl has assisted [Eric] in obtaining a mortgage ... on certain real estate ... Earl and [Eric] wish to preserve the Real Estate for their mutual use and enjoyment, as well as the use and enjoyment of their heirs ... [Eric] acknowledges the consideration for the transfer of title agreed to herein is both the assistance Earl gave to obtain and pay the Mortgage, as well as the other assistance given by Earl to permit [Eric] to obtain title to the Real Estate." The Agreement was recorded with the Register of Deeds for Columbia County on June 3, 2008, almost 9 years after it was executed. The document was in the possession of the Defendant's attorney prior to its recording.

Since 1997, the Defendant and Eric have continued to live on the Property in separate houses. The mortgages taken out in Eric's name after the Property was conveyed to him in 1998 were assigned and satisfied several years later. Eric refinanced the mortgages on the Property

2

several times between 1998 and 2008, and gave various amounts of money from these refinancings (totaling approximately $38,000) to the Defendant.

In his bankruptcy schedules, the Defendant declared that he had no interest in real estate and no future claims against anyone. The case was closed on December 3, 2007 as a no-asset case. On May 12, 2009, at the Defendant's insistence, Eric conveyed the Property to the Earl A. Eichline Revocable Trust by Quit Claim Deed. The Earl A. Eichline Revocable Trust, dated April 22, 2009, is a revocable trust established under Wisconsin law, of which the Defendant is the trustee. The Defendant testified that he believes his Revocable Trust to be essentially the same as himself, rather than a separate entity. The Quit Claim Deed was recorded on December 28, 2010.

Reportedly, the Property was recently listed for sale at a price in excess of $1,000,000.00. An email from a realtor to Eric alluded to the fact that there is substantial equity in the Property, as she told Eric that "you could consider presenting your father with some alternatives that may not be as acceptable to him as selling at a nice profit." The trustee believes that there continues to be equity in the Property. The Property is currently subject to a mortgage given by Eric while he was the title holder. According to Eric, the amount owing on this mortgage is under $400,000.00.

The trustee contends that the Defendant's right to reconveyance of the Property under the Agreement was an asset of the bankruptcy estate as of the date of the bankruptcy filing, and the May 2009 transfer of the Property to the Revocable Trust was an unauthorized post-petition transfer subject to 11 U.S.C. § 549. He seeks to have that transfer and the Property preserved for the benefit of the bankruptcy estate under 11 U.S.C. § 551.

3

The trustee argues that the Defendant committed fraud by "parking the real estate with his son and daughter-in-law" but maintaining control over the Property throughout the bankruptcy while he concealed his interest in it. The evidence shows that several "badges of fraud" were present when the Defendant conveyed the Property to Eric. See *Village of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002).

The Defendant contends that his interest in the Property was not an asset of the bankruptcy estate when he filed his petition, and therefore, the post-bankruptcy transfer does not fall within § 549. He submits that the Agreement was unenforceable for lack of consideration. He further argues that even if the Agreement was enforceable at the time the petition was filed, it reserves only a contingent interest to the Defendant because it gives Eric the choice to convey the Property either to the Defendant or to a trust. The Defendant also seeks protection under the statute of limitations in 11 U.S.C. § 549(d)(2).

A. **Equitable Tolling of § 549(d)**

An action under § 549(d) "may not be commenced after the earlier of – (1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed." 11 U.S.C. §549(d). This case was closed on December 3, 2007, well before the trustee commenced this action on March 18, 2011. Thus, while the trustee's complaint was filed within two years of the transfer, the statute of limitations expired once the case was closed.

Equity may require tolling the statute of limitations if property was fraudulently transferred or if the transfer was fraudulently concealed. See *In re Olsen*, 36 F.3d 71 (9th Cir. 1994) (every court considering the issue has held that equitable tolling applies to § 549(d)); *see also In re Papa's Market Cafe, Inc.*, 162 B.R. 519, 524-25 (Bankr. N.D. Ill. 1993). Equitable tolling

4

"applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *In re Jim L. Shetakis Distributing Co.*, 415 B.R. 791, 800 (D. Nev. 2009) (quoting *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999)). In the context of § 549(d), the statute is tolled until the trustee discovers the conveyance. *In re Olsen*, 36 F.3d at 73.

Equitable tolling may apply if the Defendant's active or passive concealment prevented the trustee from discovering his causes of action. *Morton v. Kievit*, 2011 Bankr. LEXIS 2864, *109 (Bankr. N.D. Tex. July 19, 2011) (citing *In re Juliet Homes, LP*, 2010 Bankr. LEXIS 4826 (Bankr. S.D. Tex. Dec. 16, 2010)). If the defendant passively (or negligently) conceals the transfers, the statute of limitations begins to run when the trustee either acquired or should have acquired actual knowledge of the existence of a cause of action. *Juliet Homes*, 2010 Bankr. LEXIS at *34. The trustee must show that she "exercised reasonable diligence to discover the fraud." *Id.*

The facts in this case provide ample evidence establishing active concealment on the part of the debtor. The parties signed the Agreement on February 27, 1999, but it was not recorded until June 3, 2008 – almost ten years after it was executed and six months after the bankruptcy case was closed. Although the Defendant conveyed legal title to Eric in 1998, he continued to live on the Property. The Agreement indicates that the Property is to be preserved for the benefit and enjoyment of the Defendant, Eric, and their heirs. The Defendant testified that he did not disclose the Agreement because he did not have title to the Property, and he implied that there was no need because it was to stay in the family. I must infer that the Defendant actively concealed the Agreement and did not disclose it at bankruptcy because he wanted to keep it in

5

his family. Because active concealment exists here, the statute of limitations did not begin to run until the trustee gained actual knowledge of the transfers, which was January 2011.

Even if the concealment was passive, that is: the Defendant erroneously believed that he did not need to disclose the Agreement on his bankruptcy schedules, the trustee would not have been able to discover the asset in an exercise of diligence during the course of the bankruptcy case. Unlike in *Morton*, the trustee could not have discovered the Agreement during the bankruptcy case because it was not recorded until after the case closed. The statute of limitations would run from January 2011. Because the evidence supports active, or at the very least, passive concealment by the debtor, equitable tolling of § 549(d) is justified and this case may be considered on the merits.

### B. Avoidance under § 549(a)(1)

The trustee may avoid an unauthorized transfer of property of the estate after the commencement of the case. Any entity defending a transfer under § 549 of the Code has the burden of proof. Fed. R. Bankr. Proc. 6001. No party disputes that the transfer of the Property to the Defendant's Revocable Trust occurred post-petition and without court or Code authorization. Thus, to prevail, the Defendant must establish that the Property was not property of the bankruptcy estate when it was transferred.

#### 1. Property of the bankruptcy estate

As a threshold matter, I consider whether the Defendant's interest in the Property, if valid, was abandoned when the case was closed. 11 U.S.C. § 554(c) provides that "any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this

6

title." The vast majority of courts have interpreted "any property scheduled" to mean that an unscheduled asset is not abandoned when a case is closed, even if the trustee was aware of its existence. *See In re Munoz-Gonzales*, 2001 WL 34076433, *3 (Bankr. C.D. Ill 2001) (not reported) (collecting cases); *see also In re McCoy*, 139 B.R. 430, 431 (Bankr. S.D. Ohio 1991) ("[T]he word 'scheduled' in 554(c) has a specific meaning and refers only to assets listed in a debtor's schedule of assets and liabilities."). Therefore, if the right to reconveyance of the Property was property of the estate, it is still part of the estate and has not been abandoned.

The bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This includes property in which the debtor merely had a contingent interest. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 & fn. 8, 9 (1983). According to the Court of Appeals for the Seventh Circuit, "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993)). Even a contingent, reversionary interest in property is included within the bankruptcy estate. *In re Graves*, 609 F.3d 1153, 1157 (10th Cir. 2010); *Askanase v. LivingWell, Inc.*, 45 F.3d 103, 106 (5th Cir. 1995); *see also Morton v. Kievit (In re Vallecito Gas, LLC)*, 2011 Bankr. LEXIS 2864, 58-59 (Bankr. N.D. Tex. July 19, 2011) (debtor's contingent reversionary interest in a lease was property of the bankruptcy estate).

What constitutes "property of the estate" is a federal question to be decided by federal law. *In re Yonikus*, 996 F.2d at 869. But courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case. *Id.* Because the Agreement was signed in Wisconsin, the parties reside in Wisconsin,

7

and the Property is located in Wisconsin, Wisconsin law determines the validity of the Defendant's interest in the Property.

The Agreement states that Eric would transfer the Property to the Defendant or the "family trust" when the mortgages were refinanced. But, when the Defendant filed bankruptcy, his Revocable Living Trust, dated April 2009, had not yet been created. No evidence in the record establishes that any family trust existed at the time the Defendant filed his petition. Therefore, the Defendant's equitable interest in the Property at the time he filed bankruptcy was not subject to a present choice between transferees. Language in the Agreement providing for a choice by Eric as to whom the Property would be transferred was illusory. Only Earl could receive the Property. For this reason, the Defendant's argument that the value of his interest in the Property was zero at the time of the petition fails. If the Defendant had disclosed his interest in the Property on his bankruptcy schedules, the trustee could have exercised the Defendant's right to compel transfer of the Property to the Defendant. Therefore, the value of the Defendant's interest in the Property is the value of the Property itself.

The Defendant's claim that the Agreement was unenforceable for lack of consideration also fails. Under Wisconsin contract law, consideration exists if an intent to be bound to the contract is evident. *Gustafson v. Physicians Ins. Co. of Wis.*, 223 Wis. 2d 164, 173 (Ct. App. 1998). Contracts that allegedly lack consideration may not later be argued to be invalid if the parties perform under the terms of the contract. The Wisconsin Supreme Court held that once a party executes a contract, he or she is bound by it, and can no longer contend that the contract is void for lack of consideration. *Mitchell Bank v. Schanke*, 2004 WI 13, 33 & fn.16 (Wis. 2004) (citing *Gaugert v. Duve*, 217 Wis. 2d 164, 178 (Ct. App. 1998)).

8

At trial, no party disputed that the Defendant had an equitable interest in the Property that should have been disclosed on his bankruptcy schedules. The parties entered into two contracts: the Warranty Deed which conveyed legal title of the Property to Eric, and the Agreement by which Eric promised to reconvey the Property to the Defendant once the mortgage was "paid, refinanced, or released for whatever reason." No consideration was meaningfully referenced in the Warranty Deed, but the Agreement stated that Eric acknowledged that "the consideration for the transfer of title agreed to herein is both the assistance Earl gave to obtain and pay the Mortgage, as well as the other assistance given by Earl to permit [Eric] to obtain title to the Real Estate." Even if these statements fail to establish adequate consideration, Eric performed under the Agreement by transferring the title to the Revocable Trust after the loans were refinanced. As execution of the contract foreclosed claims of inadequate consideration, performance of the contract does as well. When the Defendant filed bankruptcy, the mortgage had already been refinanced. The Property, by virtue of the Defendant's interest in it, was property of the bankruptcy estate.

**2. Transfer occurring after the commencement of the case**

According to 11 U.S.C. § 101(54), "'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." Eric conveyed the Property to the Defendant's Revocable Trust. The Property was an asset of the bankruptcy estate. Therefore, the transfer of the Property to the Revocable Trust was a post-petition transfer of property of the bankruptcy estate. The trust was not a "good faith purchaser." Since this court did not authorize the transfer and the transfer is not authorized by 11 U.S.C. § 303(f) or 542(c), it may be avoided by the trustee.

9

## C. Avoidance and Recovery

Typically, in avoidance actions brought under § 549, the debtor has transferred estate property to a third party. When that transfer is avoided, the trustee recovers the asset from the third party, and that asset is preserved for the benefit of the estate. This case is somewhat unusual because the trustee seeks to avoid a transfer of property from a third party, Eric, to the Defendant's Revocable Trust. Had the Defendant properly disclosed his interest in the Property when he filed his bankruptcy schedules, the trustee would have had the option to enforce the Defendant's rights under the Agreement. Failing to disclose his interest in the Property prevented the trustee from exercising this right, which in turn, prevented a valuable asset from being administered for creditors. The transfer must be avoided and preserved in a way that will allow the trustee to administer the property in which the debtor had an interest.

Under 11 U.S.C. § 551, "[a]ny transfer avoided under section …549 … is preserved for the benefit of the estate but only with respect to property of the estate." Property retained for the benefit of the estate becomes property of the estate under § 541(a)(4). Section 551 allows the trustee to preserve the transaction for the benefit of the estate to assert it against other claimants to the same property. *See In re Neal*, 424 B.R. 235, 236 (Bankr. E.D. Mich. 2010). Essentially, § 551 allows the trustee to step into the shoes of the transferee from whom the trustee has recovered and assert that transferee's rights against third-party claimants to the property. This section prevents the promotion of junior interests in the property recovered by the trustee through the trustee's avoidance of senior interests. While the avoided transaction remains, the benefit flows to the bankruptcy estate in the same priority as state law. *In re Laines*, 352 B.R. 416, 418 n.2 (Bankr. E.D. Va. 2006). As evidenced by its title, preservation under § 551 is automatic.

10

The trustee does not have to take any steps to preserve the transferee's rights for the benefit of the estate.

Section 550 gives the trustee the right to recover property transferred to the extent that it is avoided under § 549. 11 U.S.C. § 550(a). Recovery under § 550 is necessary only when the avoidance of a transfer does not fully satisfy the bankruptcy estate – for example, when a person or entity other than the debtor has a possessory interest in it. *See In re Burns,* 322 F.3d 421, 427-28 (6th Cir. 2003). Section 550 allows the trustee to recover the entire value of the property transferred. *Kleven v. Stewart (In re Myers),* 320 B.R. 667, 670 (Bankr. N.D. Ind. 2005). Once the transfer is pulled into the estate, the money is distributed according to the priorities established by the Code and the debtor's own commitments. *In re Phillips,* 379 B.R. 765, 780 (Bankr. N.D. Ill. 2007) (citing *In re FBN Food Servs., Inc.,* 82 F.3d 1387, 1396 (7th Cir. 1996)).

While an action to avoid a transfer is often brought in conjunction with an action to recover the property transferred or its value, a court must evaluate the two bases of relief separately. *See In re Kraft, LLC,* 429 B.R. 637, 666-67 (Bankr. N.D. Ind. 2010). To prevail in a recovery action under § 550, there must be an initial, immediate, or mediate transferee from whom the trustee may recover. 11 U.S.C. § 550(a)(1), (2). The transferee must not have taken the property for value in good faith. 11 U.S.C. § 550(b). Benefit to the creditors of the estate, rather than to the debtor alone, is necessary. *P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (In re P.A. Bergner & Co.),* 140 F.3d 1111, 1118 (7th Cir. Wis. 1998). As the Seventh Circuit Court of Appeals observed, "[c]ourts construe the 'benefit to the estate' requirements broadly, permitting recovery under section 550(a) even in cases where distribution to unsecured creditors is fixed by a plan of reorganization and in no way varies with recovery of avoidable transfers." *Id.* (quoting *In re Acequia, Inc.,* 34 F.3d 800, 811 (9th Cir. 1994)). It is not required that a benefit resulting

11

from an avoidance action only benefit the unsecured creditors: it can accrue to the exclusive benefit of the secured creditors of the estate as well. *In re Kraft, LLC*, 429 B.R. 637, 667 (Bankr. N.D. Ind. 2010) (citing *Mellon Bank, N.A. v. Dick Corp., et al.*, 351 F.3d 290, 293 (7th Cir. 2003)). Furthermore, it does not matter that benefit to creditors is allegedly negligible. *Id.* at 668. As Judge Klingeberger noted, the majority of the decisions only require that the estate benefit from recovering the asset. *Id.*

The facts in this case establish a basis for recovery under § 550. The Revocable Trust is an "initial transferee" of the post-petition transfer. See § 550(a)(1). The Revocable Trust (of which the Defendant is trustee) is not a "good faith purchaser," and the defense under § 550(b) is therefore not available. The bankruptcy estate will benefit from recovering this asset, as there is likely equity in the Property. Though the Defendant has already received a discharge, his Schedules display numerous unsecured creditors that did not receive any distribution, as the case was closed as a no-asset case in 2006. The Trustee may recover the Property from the Defendant's Revocable Trust and preserve it for the benefit of creditors. When the Property is brought into the estate, it will be subject to all appropriate encumbrances, such as mortgages.

In this case, the trustee need not initiate a separate action. The elements for recovery under § 550 are satisfied. To require the trustee to bring a separate action against the Revocable Trust over which the Defendant has control would promote form over substance. Bankruptcy courts have long possessed the authority to issue orders that are necessary to carry out the provisions of the Code. *See* 11 U.S.C. § 105; *In re Cybridge Corp.*, 312 B.R. 262, 269 (D.N.J. 2004). Section 105 provides bankruptcy courts with powers of equity similar to those granted to federal courts under the All Writs Act, including writs of injunction. *In re Combustion Engineering, Inc.*, 391 F.3d 190, 225 & n.36 (3d Cir. 2004) (citing H.R.Rep. No. 95595, at 316-17 (1977), reprinted in

1978 U.S.C.C.A.N. 5963, 6273-74 ("Section 105 is similar in effect to the All Writs Statute, 28 U.S.C. § 1651..."). The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions." *Id.* (citing 28 U.S.C. § 1651). It is now necessary to exercise this authority in order to recover and preserve this Property in a way that will allow the trustee to administer it for the benefit of creditors.

Bankruptcy courts also invoke § 105 to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done. *Id.* (citing *Pepper v. Litton*, 308 U.S. 295, 304–05, 60 S.Ct. 238, 84 L.Ed. 281 (1939) (footnote omitted)). The Defendant has lived on this Property for nearly fifteen years, and did not disclose his equitable interest to his bankruptcy attorney or to the trustee. Shortly after the bankruptcy case closed, he recorded the ten-year-old Agreement that allowed him to compel his son to transfer the Property back to him. Had the Defendant properly disclosed his interest in the Property, the trustee would have enforced the Defendant's rights under the Agreement. Accordingly, the appropriate remedy is to place the Property back in the Defendant's name and allow it to be administered for the benefit of the creditors.

The transfer of Property is avoided, pursuant to § 549. Recovery from the Revocable Trust is authorized pursuant to § 550 and § 105. It shall be so ordered.

Dated: December 13, 2011

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

13